## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

JANE DOE 1,

      Plaintiff,

v.

                    Civil Action No. 25-CV-2108 (RA)

TAL ALEXANDER,

      Defendant.

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT TAL ALEXANDER'S MOTION TO DISMISS AND MOTION TO STRIKE SCANDALOUS ALLEGATIONS FROM THE COMPLAINT

**GRUENBERG KELLY DELLA**
Michael DellaUniversita, Esq.
700 Koehler Avenue
Ronkonkoma, New York 11779
631-737-4110
*Counsel for Plaintiff*

1

# **TABLE OF CONTENTS**

2

3

4

5  TABLE OF AUTHORITIES ................................................................................ 3

6  FACTUAL BACKGROUND ............................................................................ 5

7  ARGUMENT .................................................................................................... 6

8      I.    THE MOVING DEFENDANT'S MOTION TO DISMISS
9          SHOULD BE DENIED.......................................................................... 6

10           A.    Legal Standard ........................................................................ 6

11           B.    The Victims of Gender-Motivated Violence Protection
                 Law ....................................................................................... 7

12           C.    The Child Victims Act and Adult Survivors Act...................... 8

13           D.    The VGMVPL Revival Provision Is a Lawful Exercise of
14               Local Authority and Is Not Preempted by the CVA or
                 ASA ...................................................................................... 11

15     II.   THE MOVING DEFENDANT'S MOTION TO STRIKE
16         SHOULD BE DENIED.......................................................................... 16

17           B.    The Challenged Allegations Are Admissible and Highly
                 Relevant................................................................................ 17

18 CONCLUSION ................................................................................................ 18

19

20

21

22

23

24

25

26

27

28

1

**TABLE OF AUTHORITIES**

2

3

Cases

4
Ashcroft v Iqbal, 556 U.S. 662 (2009)......................................................................... 7

5
Bell Atl, Corp. v. Twombly, 550 U.S. 544 (2007) ...................................................... 7

6
Carroll v. Trump, 660 F. Supp. 3d 196, 201 (S.D.N.Y. 2023). .................................. 17

7
Center for Independence of the Disabled v. Metropolitan Transp. Auth., 184 A.D.3d
   197 (1st Dep't 2020). ........................................................................................ 13

8

9
Consolidated Edison Co. v. Town of Red Hook, 60 N.Y.2d 99, 105–06 (1983)..... 11

Diesel Props S.R.L. v. Greystone Bus. Credit II LLC, No. 07 Civ. 9580 (HB), 2008
10   WL 4833001, at *4 (S.D.N.Y. Nov. 5, 2008)................................................... 17

11
Doe v. Black, 2024 U.S. Dist. LEXIS 175929, *20 (S.D.N.Y. 2024)...................... 11

12
Eckhart v. Fox News Network, LLC, No. 20 Civ. 5593 (RA), 2021 WL 4124616, at
   *26 (S.D.N.Y. Sept. 9, 2021)........................................................................... 17
13

14
Engelman v. Rofe, 194 A.D.3d 26 (1st Dep't 2021) ................................................. 15

15
Galper v. JP Morgan Chase Bank, N.A., 802 F.3d 437 (2d Cir. 2015)...................... 7

16
Goldstein v Pataki, 516 F.3d 50, 56 (2d Cir. 2008) .................................................. 6

17
Hertz Corp. v. City of New York, 80 N.Y.2d 565 (1992) ......................................... 12

18
In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig., 218 F.R.D. 76
   (S.D.N.Y. 2003)................................................................................................ 16

19
Lipsky v. Commonwealth United Corp., 551 F.2d 887 (2d Cir. 1976).................... 17

20
New York State Club Ass'n v. City of New York, 69 N.Y.2d 211, 221 (1987)...... 13

21
Parker v. Alexander, 2025 U.S. Dist. LEXIS 11582 (S.D.N.Y. Jan. 22, 2025) ....... 12

22
Police Benevolent Assn. of the City of New York, Inc. v. City of New York, 40
   N.Y.3d 417 (2023)........................................................................................... 11
23

24
Roe v. City of N.Y., 151 F. Supp. 2d 495 (S.D.N.Y. 2001)..................................... 16

25
See People v. Torres, 37 N.Y.3d 256 (2021)............................................................ 13

Sloup v. Loeffler, No. 05 Civ. 1766 (JFB) (JO), 2006 WL 767869, at *3 (E.D.N.Y.
26   Mar. 13, 2006)................................................................................................... 17

27
United States v. Morrison, 529 U.S. 598 (2000) ....................................................... 7

28
Winfield v. Citibank, N.A., No. 10 Civ. 7304 (JGK), 2012 WL 266887, at 9

(S.D.N.Y. Jan. 30, 2012)............................................................................... 16

Statutes

CPLR § 214-g............................................................................................... 9

CPLR § 214-j ............................................................................................... 9

N.Y.C. Admin Code. § 10-1102 ................................................................ 7

Rules

Rule 12(b)(6) ............................................................................................... 6

1
2

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF IN OPPOSITION TO DEFENDANT TAL ALEXANDER'S MOTION TO DISMISS AND MOTION TO STRIKE SCANDALOUS ALLEGATIONS FROM THE COMPLAINT**

3
4

Plaintiff Jane Doe 1 ("Plaintiff"), by and through her undersigned counsel, Gruenberg Kelly

5

Della, respectfully submits this Memorandum of Law in opposition to the Motion to Dismiss the

6

Complaint and to Strike Scandalous Allegations from the Complaint filed by Defendant Tal

7

Alexander (the "Defendant"). For the following reasons, Plaintiff respectfully requests that the

8

Moving Defendant's motion be denied in its entirety. A proposed order is attached to the

9

Declaration of Michael DellaUniversita ("Della Decl.") as Exhibit A.

10

**FACTUAL BACKGROUND**

11
12

Defendant's motion to dismiss and to strike portions of Plaintiff's Complaint is a misguided

13

attempt to avoid accountability by distorting the factual and legal landscape of this case. Plaintiff's

14

claims are neither time-barred nor "scandalous." Rather, they are grounded in traumatic lived

15

experience, corroborated patterns of abuse, and a well-pleaded complaint that satisfies all legal

16

standards. The motion should be denied in its entirety.

17
18

As detailed in Plaintiff's Complaint, attached hereto as Exhibit B, Plaintiff awoke in

19

Defendant's Manhattan apartment, in his bed, disoriented and partially unclothed—without any

20

memory of how she arrived there. This chilling moment was the culmination of a scheme to commit

21

sexual violence.

22

Plaintiff first encountered Defendant at a high-profile celebration in New York City. The

23

venue—Catch New York—was crowded with public figures and social elites, giving the

24

impression of safety. Defendant used this setting, and the social capital it conveyed, to initiate

25

contact and build trust. What followed was a calculated effort to groom and then rape Plaintiff.

26

27

On the night of the attack, Plaintiff met Defendant for dinner at Lure Fishbar and later

28

visited the now-closed Provocateur nightclub. Despite Plaintiff's limited alcohol consumption—

1   no more than one or two drinks—she experienced sudden and extreme intoxication. Based on the

2   circumstances and subsequent evidence, it is clear that Defendant drugged her. Her next

3   recollection is waking up in physical pain in Defendant's bed, with clear signs that she had been

4   vaginally penetrated. She was unable to consent to any sexual activity. What followed was equally

5   harrowing. When Plaintiff tried to leave, Defendant physically overpowered her and raped her

6   again, ignoring her verbal refusals.

7

8   These are not isolated allegations. Plaintiff's experience is tragically consistent with other

9   reports of Defendant's conduct—revealing a disturbing pattern of sexual predation, coercion, and

10  abuse of power. As a wealthy real estate mogul with significant public influence, Defendant had

11  cultivated an image designed to disarm suspicion while perpetrating harm behind closed doors. The

12  allegations contained in the Complaint are not "scandalous"—they are truthful and necessary to

13  expose Defendant's modus operandi. Efforts to sanitize or silence these facts through a motion to

14  strike are not only legally unfounded, but they are also a continuation of the very dynamics of

15  silencing and intimidation that this lawsuit seeks to challenge. Likewise, Defendant's statute of

16  limitations argument mischaracterizes the scope and intent of applicable law and disregards the

17  authority of local governments to provide additional avenues of redress for survivors, particularly

18  given the profound psychological barriers to disclosure that survivors of sexual violence routinely

19  face. Defendant's motion should be denied.

20

21

22  **ARGUMENT**

23  **I.   THE COURT SHOULD DENY THE MOTION TO DISMISS**

24  **A. Legal Standard**

25  In reviewing a motion to dismiss under Rule 12(b)(6), the Court "must construe the

26  complaint liberally, accepting all factual allegations in the complaint as true, and drawing all

27  reasonable inferences in the plaintiff's favor." <u>Goldstein v Pataki</u>, 516 F.3d 50, 56 (2d Cir. 2008).

28

6

The complaint need only "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl, Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678.

"When considering a preemption argument in the context of a motion to dismiss, the factual allegations relevant to preemption must be viewed in the light most favorable to the plaintiff. A district court may find a claim preempted only if the facts alleged in the complaint do not plausibly give rise to a claim not preempted." Galper v. JP Morgan Chase Bank, N.A., 802 F.3d 437, 444 (2d Cir. 2015).

## B. The Victims of Gender-Motivated Violence Protection Law Provides A Critical Avenue for Justice

Following the U.S. Supreme Court's decision in United States v. Morrison, 529 U.S. 598 (2000)—which struck down critical portions of the Violence Against Women Act ("VAWA")—the New York City Council took bold, decisive action. Refusing to let survivors be left without a remedy, the Council enacted the Victims of Gender-Motivated Violence Protection Law ("VGMVPL") to ensure that those harmed by gender-based violence retained the right to seek justice. N.Y.C. Admin Code. § 10-1102. The VGMVPL provides for a civil cause of action for "any person claiming to be injured by a party who commits, directs, enables, participates in, or conspires in the commission of a crime of violence motivated by gender. Id. § 10-1104. Importantly, the VGMVPL defines "crime of violence" broadly to include not only acts resulting in criminal prosecution, but also those posing serious risks of harm regardless of whether charges were brought:

> An act or series of acts that would constitute a misdemeanor or felony against the person as defined in state or federal law or that would constitute a misdemeanor or felony against property as defined in state or federal law if the conduct presents a serious risk of physical

injury to another, whether or not those acts have actually resulted in criminal charges, prosecution, or conviction.

Id. § 10-1103. Recognizing that gender-based violence is often fueled by power, control, and animus, the "crime of violence motivated by gender" is a "crime of violence committed because of gender or on the basis of gender, and due, at least in part, to an animus based on the victim's gender." Id. Survivors are entitled to a full spectrum of relief—compensatory and punitive damages, declaratory and injunctive relief, attorneys' fees, and any other remedy a court finds appropriate. Id. Further, the VGMVPL allowed for actions to be commenced within seven years after the alleged crime of violence motivated by gender. Id. § 10-1105(a).

In 2022, the City Council again demonstrated its commitment to survivor justice by amending the VGMVPL to revive previously time-barred claims, permitting survivors to file suit between March 1, 2023, and March 1, 2025 – stating:

> Notwithstanding any provision of law that imposes a period of limitation to the contrary, any civil claim or cause of action brought under this chapter that is barred because the applicable period of limitations has expired is hereby revived and may be commenced not earlier than six months after, and not later than two years and six months after, September 1, 2022.

City of New York, L.L. 21/2022 § 2. This revival provision reflected the Council's recognition that trauma often delays disclosure, and that justice delayed should not be justice denied. With this provision, the City of New York exercised its authority to ensure that survivors of gender-motivated violence committed within its jurisdiction have a path forward in their pursuit of accountability and healing.

### C. The Child Victims Act and Adult Survivors Act Cannot Plausibly Be Read as Limiting the Protections Provided by the VGMVPL

In the years following the enactment of the VGMVPL, New York State took additional historic steps to correct long-standing injustices against survivors of sexual abuse. In 2019, the State Legislature passed the Child Victims Act ("CVA"), creating a revival window for survivors

8

1    of childhood sexual abuse whose claims had previously been time-barred under outdated statutes

2    of limitations. CPLR § 214-g. The CVA opened a one-year lookback period—later extended due

3    to the COVID-19 pandemic—allowing survivors previously unable to prosecute their claims to

4

5    finally assert their rights in court. Id. The CVA window closed on August 14, 2021. Id.

6        In May 2022, recognizing that adult survivors face similar barriers to disclosure, the State

7    Legislature enacted the Adult Survivors Act ("ASA"), mirroring the CVA in structure and intent.

8    See CPLR § 214-j. The ASA opened a one-year window, from November 2022 to November 2023,

9    for adult survivors to file civil claims that had previously expired under New York's statute of

10    limitations. Id.

11

12        Significantly, these laws were not passed quietly—they were accompanied by a resounding

13    legislative mandate that justice delayed should no longer be justice denied. Governor Kathy

14    Hochul, upon signing the ASA, stated:

15            Today, we take an important step in empowering survivors across
16            New York to use their voices and hold their abusers accountable. The
                fight against sexual assault requires us to recognize the impact of
17            trauma within our justice system. I am proud to sign this legislation,
                which is part of our collective responsibility to protect one another
18            and create an environment that makes survivors feel safe. While our
                work is not done, eradicating sexual assault begins with our ability to
19            bring the perpetrators of these heinous acts to justice and this
                legislation is a historic step forward.[1]
20

21    Senate Majority Leader Andrea Stewart-Cousins echoed this purpose:

22            For too long, our legal system has failed adult survivors and prevented
                them from accessing true justice. It takes time to come forward,
23            particularly when faced with the trauma that accompanies disclosures.
                With the Adult Survivors Act, we are saying that we believe you and
24            that you deserve accountability. This powerful legislation is the first

25

26

27    _____

28    [1] Office of the Governor of New York. "Governor Hochul Signs Adult Survivors Act." New York State, 24
      November 2022, https://www.governor.ny.gov/news/governor-hochul-signs-adult-survivors-act.

1    of many steps towards better supporting survivors of sexual abuse and
2    ensuring these heinous crimes don't go unpunished.[2]

3    Assembly Speaker Carl Heastle emphasized:

4    The Adult Survivors Act is critical to ensuring that every survivor of
     sexual abuse is able to have their day in court and experience a sense
5    of justice. This legislation builds on our previous work to deliver
6    justice to survivors of childhood sexual abuse and sends a clear
     message that perpetrators will be held accountable.[3]

7
     And State Senator Brad Hoylman, the ASA's Senate sponsor, powerfully declared:
8

9    Today is a watershed moment for survivor justice in the State of New
     York. With Governor Hochul's signature on our Adult Survivors Act,
10   we send a powerful message to sexual abuse survivors: We hear you!
     We would not be here today without the courage of your convictions
11   that propelled you to share your deeply personal stories about the
     sexual abuse that upended your lives and made legislative passage
12   possible. Finally, courthouse doors across our state will be flung open
13   so you can confront your abusers and seek the justice that was too
     long denied you. To the predators who for decades have benefited
14   from New York's prohibitively short statutes of limitations, you know
     who you are. The Adult Survivors Act will bring you to justice and
15   make New York a safer place for everyone.[4]

16   These statements were not aspirational—they were promises. Together, the CVA and ASA reflect

17   a broader shift in New York law and policy: a recognition that trauma-informed justice requires

18   extending the time in which survivors can safely come forward. These legislative reforms do not

19   conflict with the VGMVPL, but rather exist alongside it, sharing the same core objective—

20   removing procedural roadblocks that have long silenced survivors.

22       Defendant's attempt to construe these laws as somehow limiting the right of Plaintiff and

23   other survivors to benefit from the protections provided by the VGMVPL runs directly counter to

24

25   _____

26   [2] Id.

27   [3] Id.

28   [4] Id.

10

1  their express purpose. To adopt that view would be to distort statutes designed to empower survivors

2  into tools of exclusion—an outcome the Legislature never expressed or in any way even suggested.

3

### D. The VGMVPL Revival Provision Is a Lawful Exercise of Local
4  Authority and Is Not Preempted by the CVA or ASA

5       Under the New York State Constitution's home rule provision, local governments may adopt

6  laws pertaining to the "government, protection, order, conduct, safety, health and well-being of

7  persons or property therein," so long as those laws are not inconsistent with the state constitution or

8  general laws. N.Y. Const., Art. IX § 2(c)(10).

9

### 1. Field Preemption Does Not Bar the VGMVPL.
10

11       Field preemption exists only where the Legislature has clearly assumed exclusive control

12 over an entire subject area by enacting a comprehensive and detailed regulatory scheme. See Police

13 Benevolent Assn. of the City of New York, Inc. v. City of New York, 40 N.Y.3d 417 (2023);

14 Consolidated Edison Co. v. Town of Red Hook, 60 N.Y.2d 99, 105–06 (1983). Such schemes often

15 feature state-created administrative bodies, investigatory authority, procedural mechanisms, and

16
   broad state oversight designed to exclude local participation. Id. New York courts have consistently

17 made clear that such preemption is not lightly inferred and requires more than detailed statutory

18 language—it requires institutional control through regulatory oversight, enforcement authority, or

19
20 administrative review. Id.

21       In Doe v. Black, the court applied this longstanding and well-established principle to the

22 CVA—a statute nearly identical in structure to the ASA – and held that the CVA's revival

23
   provision—even though specific and time-bound—did not amount to the kind of comprehensive

24
25 and detailed regulatory scheme that would preempt a local statute like the VGMVPL. 2024 U.S.

26 Dist. LEXIS 175929, *8-20 (S.D.N.Y. 2024), attached hereto as Exhibit C. The court emphasized

27 that the CVA lacked the hallmarks of comprehensive field control, including investigatory or

28 enforcement bodies, administrative mechanisms, or broad institutional mandates.

The Court in <u>Parker v. Alexander</u>, 2025 U.S. Dist. LEXIS 11582 (S.D.N.Y. Jan. 22, 2025), reached a contrary conclusion, finding that the ASA and CVA collectively occupied the field of sexual assault claim revival. While Judge Clarke in <u>Black</u> addressed only the CVA, Judge Kaplan in <u>Parker</u>, acknowledged that the ASA and CVA must be analyzed together when evaluating preemption. <u>See id</u>. at 6. This shared analytical framework reinforces that both decisions rest on a common understanding of the relevant statutory architecture—even though they diverge in outcome.

Plaintiff respectfully submits that the outcome reached by <u>Black</u> court is correct and controls the result in this case. Contrary to <u>Parker</u>'s reasoning, the mere presence of revival windows and applicability to a broad class of claims does not transform a state statute into a comprehensive regulatory scheme that could displace the City of New York's valid exercise of local authority. The ASA and CVA lack the defining features New York courts have required to infer field preemption: they do not establish enforcement bodies, impose local compliance obligations, or create procedures for administrative review. <u>See Hertz Corp. v. City of New York</u>, 80 N.Y.2d 565, 570–71 (1992) (rejecting field preemption where statutes did not reflect intent to regulate the entire field, despite addressing related conduct). The Court of Appeals in <u>Hertz</u> was clear: statutes prohibiting discriminatory practices and regulating certain fees—though detailed—were not so broad as to preclude local laws on related but distinct topics. <u>Hertz</u>, 80 N.Y.2d at 570. That analysis is directly applicable here. Just as the state's regulation of rental car companies in <u>Hertz</u> did not bar the City's law against residence-based surcharges, the ASA's narrow claim revival mechanism does not bar the VGMVPL's broader remedial framework.

Nor does the ASA's enactment after the VGMVPL compel a different outcome. The Legislature did not amend the ASA to expressly preempt local laws, nor did it give any indication it intended to undermine the City of New York's authority in passing the VGMVPL. Courts have long held that silence from the Legislature, especially where local law exists, weighs against

1  preemption. See New York State Club Ass'n v. City of New York, 69 N.Y.2d 211, 221 (1987)

2  (Legislature's failure to explicitly override local authority is strong evidence against preemption).

3  The Black court properly recognized that the CVA (and by extension the structurally similar ASA)

4  is a targeted, remedial statute—not a comprehensive regulatory regime. See Black, 2024 U.S. Dist.

5  LEXIS 175929, at 15–20. As a result, the VGMVPL operates in a complementary space—advancing

6  public protection and accountability without intruding on a field the state has claimed as exclusively

7  its own.

8

9       Although Parker critiqued how the Black court analogized the CVA to broader regulatory

10  schemes like those governing alcohol, energy siting, and wage setting, the criticism overstated the

11  analogy. See Parker, 2025 U.S. Dist. LEXIS 11582, at 10. Black never claimed that the CVA was a

12  regulatory scheme. Rather, it demonstrated that the absence of regulatory features made it distinct

13  from the types of statutes the Court of Appeals has deemed comprehensive for preemption purposes.

14  Black, 2024 U.S. Dist. LEXIS 175929, at 14-19. The purpose of these comparators in Black was

15  not to assert equivalency in complexity—it was to highlight the necessary hallmarks of field

16  preemption: agency control, institutional oversight, and regulatory permanence. Id. at 15–18. The

17  absence of these elements in the ASA and CVA strongly supports the conclusion that the Legislature

18  did not intend to occupy the field.

19

20       This understanding is further supported by the views of State Senator Brad Hoylman, a lead

21  sponsor of the CVA, who submitted an affidavit in support of the Black plaintiffs. State Senator

22  Brad Hoylman's affidavit submitted in the Black case is attached hereto as Exhibit D, ¶¶ 7-8, 12-

23  14. Senator Hoylman made clear that the plain language and purpose of the CVA were never

24  intended to preempt or limit local laws like the VGMVPL. His affidavit reinforces what the statutory

25  text and structure already make apparent: the CVA—and by extension, the ASA—were targeted,

26  remedial statutes designed to expand, not displace, avenues for justice.

13

## 2. Conflict Preemption Does Not Bar the VGMVPL

Conflict preemption applies only where a local law directly contradicts a state statute or undermines the Legislature's express intent. See People v. Torres, 37 N.Y.3d 256, 268 (2021). Courts are cautioned not to read conflict preemption too broadly, as doing so "carries with it the risk of rendering the power of local governments illusory." Center for Independence of the Disabled v. Metropolitan Transp. Auth., 184 A.D.3d 197, 212 (1st Dep't 2020).

In Black, the court found that the CVA—again, a statute structurally identical to the ASA—did not expressly or impliedly bar local revival provisions, particularly where the statutes shared a common purpose: expanding access to justice for survivors. Id. at 17–20. The Black court emphasized that the CVA's language, including its "notwithstanding" clause, which is also present in the ASA, was designed to overcome limitations that existing legislation might otherwise place on the ASA—not to extinguish or limit the reach of duly enacted municipal laws. Id. at 18–19.

The Parker court found that the VGMVPL revival provision conflicted with the ASA because it opened after the ASA's one-year window began and extended beyond its close. Id. at 11–12. Relying on this temporal sequencing and the ASA's use of the phrase "notwithstanding any provision of law which imposes a period of limitation to the contrary," the court inferred that the Legislature intended to create an exclusive revival period for *any* adult survivor seeking justice in New York, regardless of the law under which they proceed. Id. at 7, 11. That interpretation, however, overreads the ASA's text. As Black correctly held, statutory phrases like "notwithstanding any other law" are routinely used to overcome procedural hurdles—not to bar municipalities from offering broader or supplementary remedies. Black, at 18. The Court of Appeals has consistently required a clear and express intent to displace local law before finding conflict preemption. See Torres, 37 N.Y.3d at 268. The ASA contains no such intent.

1   The <u>Parker</u> court also asserted that the VGMVPL revival window "forestalled" ASA claims

2   by not opening until March 2023—after the ASA window began. But this mischaracterizes how

3   overlapping statutes function. The ASA and VGMVPL serve different purposes and target different

4   conduct. The ASA revives claims based on specific criminal sexual misconduct under Article 130

5   of the Penal Law. The VGMVPL, by contrast, targets gender-motivated violence more broadly,

6   including non-criminalized or uncharged acts. <u>See</u> N.Y.C. Admin. Code § 10-1103. The fact that

7   Plaintiff's claims might qualify under both does not mean the VGMVPL amendment obstructs the

8   ASA. Importantly, the ASA's legislative history reinforces that its intent was to expand access to

9   justice—not restrict it. When the City Council passed the VGMVPL in 2000, it did so in response

10  to the Supreme Court's decision in <u>United States v. Morrison</u>, 529 U.S. 598 (2000), which

11  invalidated portions of VAWA. The Council sought to preserve a civil remedy for gender-based

12  violence within its jurisdiction. <u>See</u> N.Y.C. Admin. Code § 10-1102. The 2022 amendment to the

13  VGMVPL was likewise motivated by a recognition that trauma delays disclosure, and that justice

14  should not be denied to survivors for failing to meet arbitrary deadlines. <u>See</u> City of New York, L.L.

15  21/2022 § 2.

16      Statements from state legislators during the ASA's passage further reinforce that it was

17  designed to expand access to justice, not curtail existing rights. Governor Hochul declared that the

18  ASA was about "empowering survivors" and confronting the systemic failures that had silenced

19  them. Similarly, Senate Majority Leader Andrea Stewart-Cousins emphasized that "it takes time to

20  come forward," and the ASA was a message to survivors: "we believe you." These statements—

21  echoed by the Speaker of the Assembly and the ASA's sponsor—underscore a legislative

22  philosophy focused on expanding opportunity for redress. There is no basis to interpret the ASA

23  as extinguishing broader, parallel rights under the VGMVPL.

15

1    Finally, the Appellate Division's decision in <u>Engelman v. Rofe</u>, 194 A.D.3d 26 (1st Dep't

2    2021), confirms the legitimacy of the VGMVPL as a distinct municipal cause of action. The court

3    upheld the VGMVPL's statute of limitations despite state law deadlines for assault and battery

4    claims, affirming that the law was a valid exercise of New York City's authority to address

5    gender-based violence. <u>Id</u>. at *35*. Though <u>Engelman</u> predates the 2022 revival amendment, its

6

7    reasoning applies equally here. The VGMVPL, passed under the City's police power, is designed

8    to protect residents from a unique category of civil rights harm.

9    Two federal courts—<u>Doe v. Black</u> and <u>Parker v. Alexander</u>—have weighed in on whether

10    the VGMVPL revival provision is preempted. The court in <u>Black</u> concluded that neither field nor

11    conflict preemption applied, based on a detailed analysis of precedent, legislative purpose, and

12

13    structural features of the statutes. <u>Parker</u>, while acknowledging this framework, disagreed with

14    <u>Black</u> on the implications of statutory sequencing and textual overlap.

15    This Court should adopt the better-reasoned view in <u>Black</u>. The ASA and CVA were

16    enacted to create opportunities for survivors—not to extinguish local options. The VGMVPL

17    revival provision furthers the shared goals of these statutes by enhancing access to justice and

18

19    reflecting a trauma-informed understanding of delayed disclosure. It does not conflict with state

20    law, but rather complements it. Accordingly, the Court should reject the defense's preemption

21    arguments and allow Plaintiff's claims under the VGMVPL to proceed.

22    ## II. THE MOVING DEFENDANT'S MOTION TO STRIKE SHOULD BE DENIED

23    ### A. Legal Standard

24    Motions to strike under Federal Rule of Civil Procedure 12(f) are strongly disfavored and

25    are rarely granted. As courts in this Circuit consistently recognize, such motions should only be

26    allowed where there is a "strong reason for doing so." <u>Winfield v. Citibank, N.A.</u>, No. 10 Civ. 7304

27    (JGK), 2012 WL 266887, at 9 (S.D.N.Y. Jan. 30, 2012), attached hereto as Exhibit E; <u>In re Merrill</u>

28

1  Lynch & Co., Inc. Research Reports Sec. Litig., 218 F.R.D. 76, 78 (S.D.N.Y. 2003) ("[G]enerally,

2  motions to strike are viewed with disfavor and infrequently granted").

3
      The movant bears a heavy burden. To prevail, the party must demonstrate that no evidence
4
   in support of the allegations would be admissible, that the allegations are entirely irrelevant to the
5
6  case, and that allowing them to remain would unduly prejudice the movant. Roe v. City of N.Y.,

7  151 F. Supp. 2d 495, 510 (S.D.N.Y. 2001). Moreover, the Court must accept the non-moving

8  party's well-pleaded facts as true, draw all reasonable inferences in their favor, and resolve all
9
   doubts against striking the allegations. Diesel Props S.R.L. v. Greystone Bus. Credit II LLC, No.
10
11  07 Civ. 9580 (HB), 2008 WL 4833001, at *4 (S.D.N.Y. Nov. 5, 2008), attached as Exhibit F. As

   the Second Circuit has cautioned, courts "should not tamper with the pleadings unless there is a
12
13  strong reason for so doing." Lipsky v. Commonwealth United Corp., 551 F.2d 887, 893 (2d Cir.

14  1976); see also Sloup v. Loeffler, No. 05 Civ. 1766 (JFB) (JO), 2006 WL 767869, at *3 (E.D.N.Y.

15  Mar. 13, 2006).

16
              **B.  The Challenged Allegations Are Admissible and Highly Relevant**
17
      Defendant seeks to strike allegations concerning his own alleged pattern of sexual
18
19  predation as well as coordinated conduct with others. These efforts fall far short of satisfying the

20  stringent Rule 12(f) standard. To begin with, a plaintiff need not prove the admissibility or even

21  ultimate relevance of allegations at the pleading stage. As Lipsky emphasized, "[o]rdinarily

22  neither a district court nor an appellate court should decide to strike a portion of the complaint on

23  the grounds that the material could not possibly be relevant on the sterile field of the pleadings

24  alone." Lipsky, 551 F.2d at 893.

25
      Nevertheless, the allegations here are not only facially relevant—they are potentially
26
27  admissible. Federal Rule of Evidence 415 explicitly provides that in a civil case involving claims

28  of sexual assault, "the court may admit evidence that the party committed any other sexual

17

1  assault." See also <u>Carroll v. Trump</u>, 660 F. Supp. 3d 196, 201 (S.D.N.Y. 2023). Moreover, the

2  challenged allegations support Plaintiff's theory that Defendant acted as part of a pattern and

3  practice of sexual misconduct—a fact that courts in this Circuit routinely recognize as relevant to

4  proving intent, motive, or modus operandi. <u>See</u> <u>Eckhart v. Fox News Network, LLC</u>, No. 20 Civ.

5  5593 (RA), 2021 WL 4124616, at *26 (S.D.N.Y. Sept. 9, 2021) (allegations of similar misconduct

6  against others, including by anonymous witnesses, were relevant to show a pattern of behavior),

7  attached hereto as Exhibit G.

8

9      Defendant's effort to exclude references to his brothers, who are not named defendants, is

10 also misplaced. These allegations are probative of the overall pattern and context of abuse

11 described in the complaint. They help explain how Defendant allegedly operated, who enabled or

12 collaborated with him, and how power was used to silence victims. Given the public and well-

13 documented nature of these accusations, their inclusion in the pleading is neither scandalous nor

14 unfairly prejudicial.

15

16     Finally, Defendant has not shown—nor can he—that the inclusion of these allegations

17 would cause undue prejudice. The potential for discomfort or reputational harm is not, by itself, a

18 basis for striking relevant material from a civil rights complaint—particularly where the

19 allegations are central to Plaintiff's theory of liability. In balancing the probative value of the

20 statements the Defendant seeks to have stricken and the potential prejudice to the Defendant, the

21 Plaintiff fails to see any prejudice that arises from statements with respect to his brothers who, as

22 is widely documented, have been accused by a litany of women of coordinated sexual predation.

23

24

25                              **CONCLUSION**

26     For the reasons stated herein, the Plaintiff respectfully requests that this Honorable Court

27 deny the Moving Defendant's Motion in its entirety.

28 Dated: April 14, 2025

                                   18

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**RESPECTFULLY SUBMITTED:**

**GRUENBERG KELLY DELLA**
Michael DellaUniversita, Esq.
700 Koehler Avenue
Ronkonkoma, New York 11779
631-737-4110

*Counsel for Plaintiff*