# Exhibit B

FILED: NEW YORK COUNTY CLERK 02/25/2025 08:46 PM
NYSCEF DOC. NO. 1
INDEX NO. 152604/2025
RECEIVED NYSCEF: 02/28/2025

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
-----------------------------------------------------------------------X
JANE DOE 1,

                       Plaintiff,

          v.

TAL ALEXANDER,

                     Defendant.
-----------------------------------------------------------------------X

**E-FILED SUMMONS**

Plaintiff designates New York County as the place of trial.

Venue is based on the county where a substantial part of the events or omissions giving rise to the claim occurred

To the above-named Defendant:

       You are hereby summoned to answer the complaint in this action, and to serve a copy of your answer, or, if the complaint is not served with this summons, to serve a notice of appearance on the Plaintiff's attorneys within twenty days after the service of this summons, exclusive of the day of service, where service is made by delivery upon you personally within the state, or, within thirty days after completion of service where service is made in any other manner.  In case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded in the complaint.

Dated: February 25, 2025

_____
**ANAPOL WEISS**
Kristen Feden (5905328)
One Logan Square
130 North 18th Street, Suite 1600
Philadelphia, PA 19103
Telephone: (215) 608-9645
Facsimile: (215) 735-2211
kfeden@anapolweiss.com

Alexandra Walsh (*pro hac vice* forthcoming)
14 Ridge Square, NW, Suite 328
Washington, DC 20016
awalsh@anapolweiss.com
202-780-3014

TO:   TAL ALEXANDER
        c/o Metropolitan Detention Center
        80 29th Street
        Brooklyn, NY 11232

1

KRISTEN GIBBONS FEDEN
5905328
kfeden@anapolweiss.com
**ANAPOL WEISS**
One Logan Square
130 North 18th Street, Suite 1600
Philadelphia, PA 19103
Telephone: (215) 608-9645
Facsimile: (215) 735-2211

ALEXANDRA M. WALSH (*pro hac vice* forthcoming)
14 Ridge Square, NW, Suite 328
Washington, DC 20016
awalsh@anapolweiss.com
202-780-3014

*Counsel for Plaintiff*

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF NEW YORK**

| | |
|---|---|
| JANE DOE 1, <br><br> Plaintiff, <br><br> v. <br><br> TAL ALEXANDER, <br><br> Defendant. | Case No.: <br><br> **COMPLAINT FOR DAMAGES** <br><br> **JURY TRIAL DEMANDED** |

   Plaintiff Jane Doe 1 ("Plaintiff"), brings this action against Tal Alexander ("Defendant" or "Tal") to recover damages arising from the injuries she suffered because of Defendant's sexual abuse, and alleges as follows:

1
COMPLAINT FOR DAMAGES AGAINST [ ] ALEXANDER

Case 1:25-cv-02108-RA   Document 15-2   Filed 04/14/25   Page 4 of 14

## I.     INTRODUCTION

1.   For over a decade, Tal, Alon Alexander ("Alon"), and Oren Alexander ("Oren"), and (collectively, "Defendants" or the "Alexander Brothers"), raped and tormented women with impunity. From the gleaming penthouses of New York and Miami, using their wealth, social connections, and carefully crafted public personas, they engaged in and meticulously concealed a sweeping enterprise of sexual violence. Plaintiff is a survivor of that violence – and in particular sexual violence committed by Tal. With this action, she seeks to hold Tal accountable for what he did to her and for Tal's devastating campaign of abuse against dozens of women.

2.   Behind the facade of their successful real estate business, Defendant and his younger brothers—Alon and Oren Alexander—executed a calculated pattern of predation. They weaponized their social media presence, exploited their connections to celebrities and influencers, and deployed their wealth to create elaborate traps for young women. Their methodology was precise: identify vulnerable targets at celebrity parties and through social media, orchestrate seemingly innocent meetings, isolate and prey on women in their luxury apartments, employ intoxicants to facilitate their assaults, and then manipulate and scare their victims into silence.

3.   The scale of Defendant's operation with his brothers is staggering. In announcing federal criminal charges against Defendant and his brothers on December 11, 2024, U.S. Attorney Damian Williams revealed the horrifying scope: "As alleged in the Indictment, for more than a decade, the Alexander Brothers, alone and together, repeatedly and violently sexually assaulted and raped dozens of female victims. Today, the defendants are charged with multiple sex trafficking offenses. Our investigation is far from over." U.S. Attorney Williams asked more women to come forward, continuing, "If you have been a victim of the alleged sexual violence perpetrated by [Defendant or his brothers] – or if you know anything about their alleged crimes – we urge you to come forward."[1]

---

[1] Press Release, U.S. Attorney's Office, Southern District of New York, Alon Alexander, Oren Alexander, And Tal Alexander Charged In Manhattan Federal Court With Sex Trafficking Offenses (Dec. 11, 2024) (https://www.justice.gov/usao-sdny/pr/alon-alexander-oren-alexander-and-tal-alexander-charged-manhattan-federal-court-sex).

2

COMPLAINT FOR DAMAGES AGAINST [ ] ALEXANDER

Case 1:25-cv-02108-RA    Document 15-2    Filed 04/14/25    Page 5 of 14

4. The criminal charges have empowered dozens of women—including Plaintiff—to break their silence. Like many others, Plaintiff was strategically targeted and brutally assaulted by Defendant in his New York penthouse. Plaintiff's experience bears the hallmarks of their established pattern: the identification of targets at celebrity parties and the deployment of drugs to incapacitate victims.

5. Accordingly, Plaintiff brings this action against Defendant to hold him accountable for violating the Victims of Gender-Motivated Violence Protection Law, N.Y.C. Admin. Code §§ 10-1101, *et seq.* ("VGMVPL") and to hold Defendant accountable for the sexual assault of Plaintiff and his broader campaign of systematic, gender-motivated violence. Defendant's conduct reflects not merely opportunistic criminality, but a deliberate enterprise built on the targeted exploitation and abuse of women.

## II.    PARTIES

6. Plaintiff Jane Doe is a resident of New York State. Given the sensitive nature of this action and the sexual assault allegations contained herein, Plaintiff proceeds under a pseudonym to protect her privacy and concurrently with this pleading will file the appropriate motion.

7. Defendant Tal Alexander resides in Brooklyn, New York, specifically the Metropolitan Detention Center ("MDC") in Brooklyn, New York, and upon information and belief, resided in Brooklyn prior to his incarceration.

## III.    JURISDICTION AND VENUE

8. The Court has personal jurisdiction pursuant to Civil Practice Law and Rules ("CPLR") § 301, *inter alia*, because Plaintiff and Defendant Tal Alexander reside in New York.

9. Venue is proper in this County pursuant to CPLR § 503(a) because a substantial part of the events giving rise to Plaintiff's claims took place in New York County, and because the horrific abuse Plaintiff endured occurred in New York.

## IV.    FACTUAL ALLEGATIONS

**A. Defendant Deliberately Targeted, Drugged, and Repeatedly Assaulted Plaintiff.**

10. One morning approximately ten years ago, Plaintiff woke up in the bed of Defendant in his New York City apartment, without knowing how she got there. This nightmarish awakening would

3

COMPLAINT FOR DAMAGES AGAINST [ ] ALEXANDER

prove to be just one instance of Defendant's calculated pattern of assault, deployed repeatedly to victimize young women.

11. Plaintiff first met Defendant at Mark Birnbaum's birthday party at Catch New York in the Meatpacking District. In this carefully curated environment of celebrity and wealth, where young women would naturally feel safe to lower their guard due to the public nature of the establishment and presence of other guests, Defendant approached Plaintiff at the party, where they exchanged contact information.

12. After cultivating a sense of trust through careful communication, Plaintiff eventually decided to go on a date with the Defendant in the following weeks. She and Defendant met at Lur Fish Bar in New York - a deliberate choice of upscale venue designed to project sophistication and trustworthiness - before stopping by a now-closed nightclub named Provocateur.

13. Plaintiff's plan was to spend a short time at the nightclub with Defendant before meeting up with a female friend of hers afterwards - a safety plan that Defendant would systematically dismantle.

14. Instead, Plaintiff had one or two drinks with Defendant in the nightclub. Shortly thereafter, she began experiencing extreme and unusual intoxication far beyond what her limited alcohol consumption could explain.

15. Upon information and belief, Defendant deliberately contaminated Plaintiff's drink with an intoxicating substance, consistent with his established pattern of using drugs to facilitate sexual assault.

16. The next thing Plaintiff remembers is waking up in Defendant's bed, where her state of undress, physical position, and vaginal pain left no doubt that Defendant had raped her while she was in a state of extreme intoxication. Plaintiff did not and could not have consented to sex that night.

17. Rather than showing any remorse upon her awakening, Defendant escalated his predatory behavior. When Plaintiff woke up and told Defendant that she was going home, Defendant refused to let her leave.

4

COMPLAINT FOR DAMAGES AGAINST [ ] ALEXANDER

Case 1:25-cv-02108-RA    Document 15-2    Filed 04/14/25    Page 7 of 14

18. Despite her verbal protestations and repeated "No's," Defendant ignored her clear refusal of consent and proceeded to rape her *again*, using his physical dominance and control of the environment to perpetrate another violent assault while she remained trapped and unable to escape.

19. Only after he sexually assaulted Plaintiff for a second time did Defendant permit Plaintiff to leave, albeit in a controlled fashion – having his driver take her home - a calculated move that both emphasized his power and attempt to create an air of legitimacy around the sexually violent encounter.

20. The sexual assault was substantially motivated by Defendant's animus toward women, as evidenced by Defendant's:

a.   Premeditated use of alcohol and other intoxicants to impair Plaintiff, as demonstrated by her rapid and severe impairment despite minimal alcohol consumption;

b.   Deliberate exploitation of her chemically induced vulnerability, shown by timing his assault to occur after the drugs took effect;

c.   Treatment of Plaintiff as a mere object for their sexual gratification rather than a human being, demonstrated by assaulting her while unconscious and then again upon her awakening;

d.   Complete disregard for Plaintiff's explicit verbal refusals, showing his view that women's expressions of non-consent were meaningless and irrelevant to his pursuit of sexual contact;

e.   Use of physical intimidation and environmental control to prevent escape, reflecting his view that women could be physically dominated at will;

f.   Calculated progression from drugging to assault to forcible confinement, showing an escalating pattern of control and violence;

g.   Exploitation of his wealth, status, and social connections to create a circumstance where he believed himself immune from consequences;

h.   Strategic use of public venues and social settings to establish a false sense of safety before isolating his victim;

5

COMPLAINT FOR DAMAGES AGAINST [ ] ALEXANDER

i.  Sophisticated understanding of how to use wealth markers like private drivers to mask criminal misconduct;

j.  Pattern of targeting young, vulnerable women through mutual connections, demonstrating his deliberate selection of victims he believed he could overpower, silence, and discredit;

k.  Escalation of violence upon Plaintiff's awakening, showing his comfort with overt force once his victim was isolated;

l.  Calculated use of drugs to ensure victims would have impaired memory and therefore be less likely to report or be believed; and

m.  Deliberate selection of assault locations that maximized his control while minimizing potential witness intervention.

21. As a direct and proximate result of Defendant's actions, Plaintiff has suffered severe and ongoing emotional distress, psychological impairment, and economic damages, including but not limited to intrusive memories and flashbacks of the horrific assault, severe anxiety in social situations, difficulty maintaining intimate relationships, sleep disturbances and nightmares, hypervigilance and an exaggerated startle response, as well as panic attacks triggered by environmental stimuli reminiscent of the assault; and will have an ongoing need for psychological treatment and therapy.

**B. Defendant and His Brothers Had a Well-Known Penchant for Sexually Assaulting Women.**

22. Unfortunately, Plaintiff is far from the only victim of Defendant or his brothers.

23. For years, Defendant and his brothers engaged in a similar pattern of schemes, acts, and conduct with different women, many of whom have found the courage to come forward and seek justice.

6

COMPLAINT FOR DAMAGES AGAINST [ ] ALEXANDER

24. As they "built an image as jet-setting bachelors," Defendant and his brothers "were quietly earning another reputation: Accusations that they drugged and sexually assaulted women were spreading throughout the world of high-end real estate."[2]

25. Two brave women—Rebecca Mandel and Kate Whiteman—stood up in March 2024 and filed suit in New York against Defendant's brothers, Alon and Oren, accusing them of assault, battery, and rape.[3] They alleged a similar pattern of behavior against other women.

26. They were correct. A third woman—Angelica Parker—filed a lawsuit in June of 2024, accused all three brothers of rape. She noted in her complaint that thirty more women came forward after news broke of the initial lawsuits against Defendant and his brother.[4]

27. Like Plaintiff, Ms. Parker was a victim of a coordinated sexual assault. Ms. Parker was vaginally raped and forcibly orally raped at the same time by Defendant and his brothers.[5]

28. Upon further investigation, "dozens of former classmates, brokerage employees and agents" have said "that they had knowledge of drugging and violent sexual assault by the brothers, dating back at least twenty years to when the men were high school students."[6]

29. Law enforcement agencies around the country have followed these brave women and filed criminal charges against Defendant and his brothers.

30. A federal grand jury in the Southern District of New York indicted Defendant, and his brothers, Alon and Oren, in December 2024. The U.S. Attorney's Office alleged repeated and violent drugging, assaulting, and raping of dozens of women since at least in or about 2010.[7] The

---

[2] Debra Kamin, *These Brothers Were Real Estate Hotshots. And Predators, Some Women Say*, N.Y. TIMES (July 26, 2024), https://www.nytimes.com/2024/07/24/realestate/tal-oren-alexander-sexual-assault.html.

[3] Brooklee Han, *Real estate broker Oren Alexander and brother accused of rape in New York*, HOUSINGWIRE (June 10, 2024, 5:21 PM) https://www.housingwire.com/articles/real-estate-broker-oren-alexander-and-brother-accused-of-rape-in-new-york/.

[4] Exhibit A - Docket and Summons & Complaint from Originating Court at 4, *Parker v. Alexander et al.*, 1:24-cv-04813-LAK (S.D.N.Y. June 25, 2024), ECF 1-1. Ms. Parker's Complaint was dismissed, but the Court's dismissal is being appealed.

[5] *Id.* at 6-7.

[6] Kamin, *supra* note 2.

[7] Superseding Indictment at 5, U.S. v. Alexander et al., 1:24-cr-00676-UA (S.D.N.Y. Dec. 11, 2024), ECF 3.

7

COMPLAINT FOR DAMAGES AGAINST [ ] ALEXANDER

Case 1:25-cv-02108-RA    Document 15-2    Filed 04/14/25    Page 10 of 14

indictment alleged that Defendant, and his brothers, Alon and Oren, used their wealth to lure women to locations where they were forcibly raped them, sometimes by Defendant and his brothers, and sometimes by multiple other men, and often with the aid of drugs to prevent the women from fighting back.

31. The allegations demonstrate Defendant had a history of drugging and assaulting women using a playbook almost identical to what he used on Plaintiff.

32. As outlined in the superseding indictment, Defendant, along with his brothers Alon and Oren, "used social connections or the guise of starting a relationship to lure and entice women to meet . . . then sexually assaulted the woman, sometimes within hours of their meeting."[8]

33. Defendant "used deception, fraud, and coercion" to get women "to meet them in private locations."[9] He then "used various methods, including drugging the victims and, at times, physical force, to rape and sexually assault the victims—sometimes alone and sometimes together."[10]

34. Federal prosecutors say that "[Defendant and his brother have] spoken to more than 60 alleged victims of the three men so far,"[11] and have videos of Defendant and his brothers "engaged in sexual acts with who appear to be under the influence of drugs or alcohol."[12] They plan to bring more charges.[13]

35. State authorities have filed charges too. Oren and Alon face felony sexual battery charges in Miami-Dade for three incidents involving three different women.

36. According to one of the victims, she took a drink from Oren, began to feel "weird," and did not "have the strength" to "push" Oren away as he raped her.[14]

---

[8] *Id.* at 3.

[9] *Id.* at 2.

[10] *Id.* at 2-3.

[11] *Id.*

[12] Alice Gainer, *Alexander brothers will face more charges as 60 women allege rape, prosecutors say*, CBS NEWS (Feb. 7, 2025, 8:22 PM), https://www.cbsnews.com/newyork/news/alexander-brothers-will-face-more-charges/.

[13] *Id.*

[14] Chloe Atkins, *Women detail alleged assaults by real estate star Oren Alexander and his brother*, NBC NEWS (Feb. 6, 2025, 7:23 PM), https://www.nbcnews.com/news/us-news/women-detail-alleged-assaults-real-estate-star-oren-alexander-brother-rcna191110.

8

COMPLAINT FOR DAMAGES AGAINST [ ] ALEXANDER

37. Another victim described a harrowing scene. As she was forcibly pinned down, Alon and Oren asked each other, "Do you want to go first? Do you want to go first?" before raping her.[15]

## V.     PLAINTIFF'S CLAIMS

### FIRST CAUSE OF ACTION

### Violation of the Victims of Gender-Motivated Violence Protection Law,

### N.Y.C. Admin. Code §§ 10-1101, *et seq.* ("VGMVPL")

38. Plaintiff repeats and realleges each and every allegation contained in the preceding paragraphs as if fully set forth herein.

39. This claim is brought against Defendant Tal Alexander.

40. As set forth below, Defendants violated the Victims of Gender-Motivated Violence Protection Law (VGMVPL) by "committing a crime of violence motivated by gender."

41. The VGMVPL defines a "crime of violence motivated by gender" as "a crime of violence committed because of gender or on the basis of gender, and due, at least in part, to an animus based on the victim's gender." Admin. Code § 10-1103(b).

42. Put together, the elements of a violation of the VGMVPA are: (1) the alleged act constituted a misdemeanor or felony against the Plaintiff; (2) presenting a serious risk of physical injury; (3) that was perpetrated because of Plaintiff's gender; and (4) in part because of animus against Plaintiff's gender. *Id.*

43. Defendant's actions meet the first element of a VGMVPL violation, as his conduct violates Article 130 of the New York Penal Law:

    a. Defendant committed Rape in the first degree, a violation of § 130.35, by engaging in vaginal sexual contact with Plaintiff (a) by forcible compulsion when he would not let Plaintiff leave in the morning without having sex; and (b) when Plaintiff was incapable of consent by reason of being physically helpless as a result of the intoxicant.

    b. Defendant's actions incorporate the lesser and included crimes of: § 130.25—Rape in the third degree—because Plaintiff was "incapable of consent"; § 130.65—Sexual

---

[15] *Id.*

9

COMPLAINT FOR DAMAGES AGAINST [ ] ALEXANDER

abuse in the first degree—because Defendant raped Plaintiff "by forcible compulsion" and Plaintiff was "incapable of consent by reason of being physically helpless"; and § 130.20—Sexual misconduct—because Plaintiff did not consent to the vaginal sexual contact.

c. Defendant also violated § 130.90—Facilitating a sex offense with a controlled substance—by adding an intoxicant to Plaintiff's drink "without [her] consent and with intent to commit . . . conduct constituting a felony." The drink left Plaintiff unaware and unable to consent to sex or to physically resist Defendant's sexual assault.

44. Defendant's actions presented a serious risk of physical injury. As stated above, the direct and proximate result of Defendant's gender-motivated violence is that Plaintiff has suffered and continues to suffer, severe and ongoing emotional distress, psychological impairment, and economic damages, including but not limited to intrusive memories and flashbacks of the assault, severe anxiety in social situations, difficulty maintaining intimate relationships, sleep disturbances and nightmares, hypervigilance and an exaggerated startle response, as well as panic attacks triggered by environmental stimuli reminiscent of the assault; and will have an ongoing need for psychological treatment and therapy.

45. Defendant's violent acts were motivated by gender as evidenced by Defendant's as outlined herein.

46. Additionally, the Appellate Division First Department has held that where the plaintiff is an alleged victim of rape, an allegation of rape is sufficient to show animus on the basis of gender. *Breest v. Harris*, 180 A.D. 3d 83 (1st Dept. 2019).

47. Plaintiff brings this action under VGMVPL's revival statute, passed by the New York City Council in January 2022, which allows otherwise time-barred claims to be brought until March 1, 2025. Admin. Code § 10-1105(a).

48. Plaintiff seeks compensatory damages, punitive damages, attorneys' fees, costs, and such other relief as the Court deems just and proper under § 10-1104.

49. The Defendant's misconduct was willful, wanton, malicious, and oppressive, and manifested a conscious disregard for Plaintiff's rights and safety, thereby warranting punitive

10

COMPLAINT FOR DAMAGES AGAINST [ ] ALEXANDER

Case 1:25-cv-02108-RA    Document 15-2    Filed 04/14/25    Page 13 of 14

damages under the common law standard for the purpose of punishing and deterring reprehensible conduct. *Chauca v. Abraham*, 30 N.Y.3d 325 (2017).

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment against Defendants for the above-referenced claims and causes of action, and as follows:

1. Award compensatory damages in an amount to be determined at trial, including but not limited to damages for:

   a. Medical expenses, past and future;

   b. Impaired earning capacity;

   c. Past and future emotional distress and psychological trauma;

   d. Past and future loss of enjoyment of life;

2. Award punitive damages in an amount to be determined at trial sufficient to punish Defendants for their willful and malicious conduct and to deter similar conduct by others;

3. Award prejudgment and post-judgment interest to the fullest extent permitted by law;

4. Award reasonable attorneys' fees and costs;

5. For such other and further relief as the Court may deem just and proper.

## **DEMAND FOR A JURY TRIAL**

Plaintiff hereby demands a trial by jury on all claims so triable.

Date:    February 25, 2025

By: _Kristen Feden_____

**ANAPOL WEISS**
Kristen Feden (5905328)
One Logan Square
130 North 18th Street, Suite 1600
Philadelphia, PA 19103

11

COMPLAINT FOR DAMAGES AGAINST [ ] ALEXANDER

Telephone: (215) 608-9645
Facsimile: (215) 735-2211
kfeden@anapolweiss.com

Alexandra Walsh (*pro hac vice* forthcoming)
14 Ridge Square, NW, Suite 328
Washington, DC 20016
awalsh@anapolweiss.com
202-780-3014

12

COMPLAINT FOR DAMAGES AGAINST [ ] ALEXANDER